HARDY, Judge.
This suit has been resolved into a peti-tory action in which plaintiffs, asserting themselves to be fee owners of the subject property and joined by the lessee of the minerals thereon, seek judgment recognizing their respective ownerships. Named as defendants were certain individuals, allegedly claiming possession and ownership of the property involved, and their mineral lessee, Arkansas Louisiana Gas Company. Incidental to their principal demand for the establishment of legal ownership, plaintiffs sought an accounting for all oil, gas and other minerals produced by the defendant, Arkansas, from a well drilled and completed by said company on property unitized with the tract here involved. From a judgment in favor of plaintiffs the defendant, Arkansas Louisiana Gas Company, has perfected this suspensive and devolu-tive appeal. The individual defendants, after obtaining an order of appeal, per *60 fected the same devolutively but do not seem to have made any appearance in this court. However, it may be observed, in view of our conclusions, that this apparent abandonment of their appeal is immaterial.
Plaintiffs alleged and established on trial the acquisition of the property in dispute by their ancestors, James Green and William Johnson, by deed dated October 11, 1881, from Aaron Parker, the vendor, which conveyed in addition to the property involved in this suit, a tract of forty acres immediately south and adjacent thereto. The tract of land in contest embraces thirty-seven acres located in Ouachita Parish and described as being:
“All that part of the SW (4 of the NW J4 °f Section 2, Township 17 North, Range 1 East, lying south of Gaskin’s Spring Branch.”
Defendants claim title as the result of thirty years acquisitive prescription allegedly beginning with a corporeal detention and continued by such acts as cutting of timber, payment of taxes, execution of mortgages, mineral leases, etc.
Our examination of the detailed and exhaustive four volume record in the instant case has been made immeasurably less difficult by the very complete and exceptionally well developed briefs and oral arguments of the most able counsel for the parties litigant, to whom we take this opportunity of expressing our sincere appreciation. Nevertheless, while it was incumbent upon counsel to pursue every possible ramification of fact and law with respect to their opposed contentions and claims, we think the controlling issue of the instant case is reduced to a purely factual determination as to whether defendants have established the facts which are essential to support their plea of ownership resulting from the establishment of title by the running of prescription of thirty years acquirendi causa.
There can be no serious question as to the principles of law which are appropriate and applicable. Primarily, defendants’ claims must be measured by their conformity, vel non, to the articles of the LSA-Civil Code, 3499-3503, inclusive. These provisions require that the ownership of an immovable may be acquired by the prescription of thirty years without need for title or possession in good faith, if certain specified conditions and factual circumstances are established. Particularly appropriate to the instant case is the concluding article (3503) in the above series, which reads:
“How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is acquired without title, it extends only to that which has been actually possessed by the person pleading thereto.”
The opinion of Mr. Justice Hawthorne in the case of Hill v. Richey et al., 221 La. 402, 59 So.2d 434, has done much to clarify by sound reasoning and logical development some of the troublesome features with respect to the necessary requirements for the establishment of title by prescription. The re-enunciation of principles theretofore established by our jurisprudence and the interpretation of the articles of the Code, above enumerated, in the opinion of the cited case are particularly appropriate to the issue under consideration on this appeal.
Having found that plaintiffs’ claims to the ownership of the property involved derived from a record title thereto, it is necessary that we proceed to a consideration of the evidence presented by defendants in support of their prescriptive claim in the light of the fulfillment, vel non, of the legal requirements.
Plaintiffs’ petition was filed January 24, 1961, and it therefore follows that the defendants are obligated to establish the basis of the beginning of their prescriptive claim on same date more than thirty years prior thereto.
*61 It is well established that a party-pleading the prescription of thirty years must begin by the actual physical and corporeal detention and possession of the property which he seeks to acquire; Hill v. Richey, supra. This is the first and most important factual burden which defendants in this case are obligated to assume and discharge. The written opinion of the district judge carefully analyzed the testimony on this point and concluded that it was insufficient to establish the necessary actual and corporeal possession at a time which would have permitted the running of the prescriptive period prior to the institution of this suit. Our appreciation of the testimony and evidence in the record leads us to the same conclusion, and we will not burden this opinion with a detailed recapitulation thereof. We deem it sufficient to say that defendants’ contention on this factual issue almost exclusively rests upon the validity and credibility of the testimony of Dennis Roberson, one of the defendants. After a discussion of the testimony of this witness, the district judge observed that it seemed “most inexact.” We are completely in accord with this conclusion and are frank to confess that our own analysis would justify a somewhat stronger term.
In the effort to corroborate the testimony of the above named witness, defendants further attempted to show possession within a fenced enclosure. While the rule that one claiming ownership by prescription must show adverse possession by “enclosure”, has been relaxed to the extent that the term “enclosure” is no longer strictly construed, it is, nevertheless, required that the proof of such a fact must conform to the requirements for the establishment of some nature of boundaries within which the possession has been exercised; Hill v. Richey, supra; Scott v. Blanton, La.App., (2d Cir., 1959, writs denied), 115 So.2d 658. In the instant case defendants failed to establish boundaries by fences, natural monuments or other indicia thereof which could be accepted even under the most liberal interpretation of the term “enclosure.” It should further be noted in this connection that acceptable boundaries establishing possession are related to the nature of the land involved; for example, the interpretation is not as strict with relation to swamp lands as it is with respect to property in agricultural areas; Hill v. Richey, supra; Jacobs v. Southern Advance Bag &. Paper Co., 228 La. 462, 82 So.2d 765. The land involved in this case is situated in what may be designated as agricultural hill land suited for both the growing of timber and the raising of various farm commodities. The fences which defendants assert to constitute boundaries or enclosures were not erected by the defendants for either of such purposes, nor did they serve to actually enclose any specific portion of the subject property. As was said in the opinion in the Hill v. Richey case:
“What the court means by ‘enclosure’, as the term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial-marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof.”
In a further effort to sustain their claims of original acts establishing corporeal possession, defendants tendered the testimony of an expert forester, whose opinion was that a certain portion of the land showed evidences of cultivation and that the timber growth was consistent with this conclusion. However, the opinion and conclusion of this witness was successfully rebutted by plaintiffs through the testimony of another expert forester, whose inspection and examination of the property impresses us as having been conducted much more thoroughly and scientifically than the examination made by defendant’s forester, who *62 substantially relied upon information given him by employees of the defendant, Arkansas. In further rebuttal, plaintiffs offered the testimony of a licensed engineer and surveyor, who procured the making of aerial photographs of the property and conducted an extensive personal study and survey of the land. It was the conclusion of this witness that no basis existed for the establishment of any boundary between the small portion of the land, which gave evidence of some cultivation at an uncertain period of time, and the remainder of the tract with respect to which there was no evidence of cultivation.
It should be observed that the opinion of the district judge did not make reference to the expert testimony which we have above discussed, perhaps for the reason that he deemed the same to be merely cumulative and unnecessary to the establishment of his final conclusion. However, we have been inclined to attach considerable importance to this portion of the evidence, which we believe substantially strengthens our conclusion that defendants have failed to establish the elements necessary to support their plea of ownership by prescription.
As the result of our examination of the record, we are convinced that defendants have failed to support the existence of any nature or character of “enclosure” by fences, natural boundaries, or marking of any nature which could be accepted even under a liberal interpretation of the term.
Defendants have signally failed to establish the beginning of corporeal possession of the property, or any definable portion thereof, at a time which would admit of the application of the period of thirty-year prescription, and we are in complete accord with the finding of the district judge that he was unable to ascertain, with any degree of certainty, that there was any farming on the land in dispute prior to 1932 or 1933. At or about one of these years, one Ferd King testified that he began to farm a few acres of the subject tract of land under an agreement with the defendant, Clem Roberson, and, in our opinion, this is the only definite and reliable testimony of any act of corporeal detention which would justify the beginning of adverse possession necessary to acquisition by prescription, and, perforce, it comes too late to benefit defendants’ contentions.
We think it unnecessary to comment upon the sporadic and intermittent acts with reference to the cutting of timber since these can only be construed as incidents of trespass rather than constituting, in themselves, such acts of open, notorious, adverse possession as owners which are the requirements of the codal articles. LSA-C.C. Art. 3478; Jacobs v. Southern Advance Bag & Paper Co., 228 La. 462, 82 So.2d 765.
There is no question as to the fact that defendants have paid taxes, executed mortgages, leases and made sales of mineral rights over periods far in excess of thirty years, but all of these are evidences of civil possession which are unavailing unless preceded by an original, actual, corporeal possession.
Possession in any case involving the question of title by prescription must rest upon the facts of each case; Hill v. Richey, supra; McHugh v. Albert Hanson Lbr. Co., Ltd., 129 La. 680, 56 So. 636.
In the instant case defendants have failed to prove, with any degree of certainty, the time of beginning of any acts of corporeal detention and possession prior to 1932 or 1933; they have failed to establish any definite boundaries or marks which would certainly define the extent and nature of their contended possession. It follows, absent the factual establishment of corporeal possession preceding the numerous acts of civil possession, that their claims must fail and, accordingly, were properly rejected.
Finally, we note the argument of distinguished counsel for defendant, Arkansas Louisiana Gas Company, that the heirs of Jim Green, one of the original record owners of the property involved, have not *63 been definitely identified. We cannot accept this contention, first, because we think the record sufficiently establishes the heir-ship of the Green plaintiffs, and, second, because defendants failed either to controvert the showing of heirship made by these plaintiffs or establish the existence of other heirs. In any event, we consider the argument on this point irrelevant since defendants have no right to contest the interests of the respective plaintiffs which they have recognized and admitted between themselves; Doiron et al. v. Vacuum Oil Co. et al., 164 La. 15, 113 So. 748; Stille v. Schull, 41 La.Ann. 816, 6 So. 634.
The last cited case held that the plaintiff in a petitory action is not bound to show title perfect against the world; that a defendant can not take advantage of defects in the title exhibited by plaintiff, and that an apparently good title is sufficient as against him.
For the reasons assigned the judgment appealed from is affirmed at appellants’ cost, in both courts. Inasmuch as the judgment involves title and rights to real property, it is necessary, in accordance with LSA-C.C. P. Art. 1919 that we describe the property and the interest in this judgment.
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Josephine Mimes, Emile Elbert, Allen Johnson, Pearlie Johnson Hayes, Rufus Johnson and Mose J. Johnson, in the proportion of an undivided Jieth interest each, and Lucille Harrison, Charlee Harrison Minnefield, Wency Ann Harrison Starks, Mary Ellen Robinson, Noda Harrison and Joel Harrison, in the proportion of an undivided Jkth interest each, and Willie Jenkins Cobin, Daisy Jenkins Marbray, Joseph Jenkins, Elson Jenkins, Jr., Wash Andy Jenkins, Minerva Jenkins Lewis, Johnny C. Jenkins and Joshua Jenkins, in the proportion of an undivided Jioth interest each, and C. H. (Buster) Green, Edith Green Nedd, Willie Green Nedd, Queenie Green Little, Nina Mae Green Evans and Sam Brown, in the proportion of an undivided Msth interest each, have and recover judgment against defendants, Arkansas Louisiana Gas Company, Carrie Roberson, Dennis Roberson and Lela Mae Roberson, recognizing plaintiffs as the owners, and, as such, sent into possession of the following described property, together with all oil, gas and other minerals lying in, on or under said land, situated in the Parish of Ouachita, State of Louisiana, towit:
“All of the SW 14 of NW 4, Section 2, Township 17 North, Range 1 East, less and except three (3) acres lying north of Gaskin’s Branch, and being a portion of the same property described in deed dated October 11, 1881 from Aaron F. Parker to James Green and William Johnson, of record in Conveyance Book Y, page 358, Oua-chita Parish, Louisiana.”
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the mineral interests of plaintiffs named above are subject to certain oil, gas and mineral leases from said plaintiffs to A. K. Kilpatrick, (now assigned to J. M. Menefee) and to J. M. Menefee direct, and particularly the following mineral leases and assignments of record in the Parish of Ouachita, Louisiana :
LEASES IN NAME OF A. K. KILPATRICK
(a) Lease dated August 22, 1959, recorded in Conveyance Book 678, page 652.
(b) Lease dated August 22, 1959, recorded in Conveyance Book 678, page 655.
(c) Lease dated August 22, 1959, recorded in Conveyance Book 678, page 661.
(d) Lease dated August 22, 1959, recorded in Conveyance Book 678, page 664.
(e) Assignment from A. K. Kilpatrick to J. M. Menefee of above leases dated August 29, 1960, recorded in Conveyance Book 710, page 476.
*64 LEASES IN NAME OF J. M. MENEFEE
(f) Lease dated April 30, 1960, recorded in Conveyance Book 706, page 184.
(g) Lease dated July 20, 1960, recorded in Conveyance Book 706, page 722.
(h) Lease dated July 23, 1960, recorded in Conveyance Book 707, pages 31 and 34.
(i) Lease dated August 17, 1960, recorded in Conveyance Book 709, page 482.
(j) Lease dated February 21, 1961, recorded in Conveyance Book 728, page 95.
(k) Lease dated March 13, 1961, bearing Registry No. 490412, Ouachita Parish, Louisiana.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that that certain mineral lease from Carrie Roberson, et al. to Arkansas Louisiana Gas Company, dated February 17, 1959, of record in Conveyance Book 662, page 292 of the records of Ouachita Parish, Louisiana, and that certain succession judgment in the Succession of Clem Roberson, No. 4323 on the Probate Docket, Fourth District Court, of record in Conveyance Book 501, page 442 insofar as said judgment covers and affects the land described herein, be and they are hereby declared to be clouds on plaintiffs’ title, and are hereby ordered cancelled and erased from the public records insofar as they affect the land described herein.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant Arkansas Louisiana Gas Company be and it is hereby ordered to render an accounting to all plaintiffs herein of all the gas, distillate or other minerals taken and removed from plaintiffs’ said property through the N. D. Morgan No. 1 Well, now situated on a drilling and production unit established by order of the Commissioner of Conservation, and in which the land described herein is incorporated as part of said production unit.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant Arkansas Louisiana Gas Company pay unto plaintiffs, as their respective interests may appear, their proportionate share of all amounts received by said Arkansas Louisiana Gas Company as the operator of said unit well from the sale of oil, gas, distillate or other minerals produced from said unit from date of first production until paid, together with legal interest thereon from the date of sale of said oil, gas, distillate or other minerals, subject to payment by plaintiffs of their pro rata share of the cost of drilling and producing gas or other minerals from the N. D. Morgan No. 1 Well.